1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                       * * *

9   FRANKLIN CARL LEFEVER,                    Case No. 2:10-cv-01917-MMD-PAL

10                            Plaintiff,

11          v.                                                ORDER

                                              (Def.'s Motion for Summary Judgment
12  PHILLIP NICHOLSON,                                 – dkt. no.  44;
                                              Plf.'s Motion to Extend Time – dkt. no.  46;
13                           Defendant.         Plf.'s Motion to Withdraw – dkt. no. 48)

14

15  **I.      SUMMARY**

16          Before the Court is Defendant Phillip Nicholson's Motion for Summary Judgment

17  (dkt. no. 44), as well as Plaintiff Franklin Carl Lefever's Motion to Extend Time (dkt. no.

18  46) and Motion to Withdraw Motion to Extend Time (dkt. no. 48).   Good cause

19  appearing, the Court grants Lefever's Motion to Withdraw, denies Lefever's Motion to

20  Extend Time, and issues this Order after review of the relevant briefing.

21  **II.     BACKGROUND**

22          Lefever, a former pretrial detainee at the Nye County Detention Center ("NCDC"),

23  brought this suit against various officials at NCDC alleging, *inter alia*, that NCDC

24  personnel violated his Fourteenth Amendment Due Process right against excessive

25  force.  (*See* Compl., dkt. no. 3.)  He alleges that during his pretrial detention around

26  August 18, 2010, Defendant Deputy Phillip Nicholson entered his cell and ordered him to

27  relocate to another unit.   After a disputed exchange between the two, Nicholson

28  handcuffed Lefever.  Lefever alleges that he merely asked about various issues relating

to his detention, his property, and a visitor, but that Nicholson responded with disdain and rudeness before handcuffing him.  (*See* Lefever Dep., dkt. no. 44-B, at 25:2-22.) Nicholson, on the other hand, accuses Lefever of being "verbally aggressive," thereby necessitating his handcuffing.  (*See* Nicholson Decl., dkt. no. 44-A, at ¶¶ 10-11.)

After the handcuffing, Nicholson noticed that the index finger portion of the glove he was wearing at the time became lodged in the cuff.  (*See* dkt. no. 49-1.)  In order to remove the glove piece, Nicholson "yanked it out," which caused Lefever's wrist "to twist more than usual."  (*Id.*)  After escorting Lefever out of his cell, Lefever complained that his wrist was in pain.  Nicholson, with the help of another deputy, removed the handcuffs after escorting Lefever to another cell.  Lefever alleges that the tight handcuffing injured his left wrist and thumb, causing cuts and bleeding in three different places and numbness in his left thumb.  Lefever alleges that he was taken to the emergency room on August 19, 2010, and was told by the presiding physician that the numbness he experienced was caused by a severely pinched nerve and would subside in a few days. After a few days of continued pain and numbness, Lefever requested more medical attention by filing a medical attention request form (commonly referred to as "kites").

Thirty days later, on approximately September 20, 2010, an NCDC staff member summoned Lefever to inquire about his injury.  Assuming that he would receive attention shortly, Lefever filed a grievance on October 3, 2010, requesting medical attention.  A response was made notifying Lefever that a proper medical request was made.  After another two and a half weeks, Lefever was seen by a doctor for his injuries.

As a result of his ordeal, Lefever brought this suit on November 2, 2010, against various NCDC officials alleging, *inter alia*, excessive force in violation of the Fourteenth Amendment. The Court screened Lefever's initial Complaint, and allowed only his excessive force claim to proceed under his original, not Amended, Complaint.  (*See* dkt. no. 6.)

Defendant Deputy Phillip Nicholson now moves for Summary Judgment.  (*See* dkt. no. 44.)

1    **III.    LEGAL STANDARD**

2           The purpose of summary judgment is to avoid unnecessary trials when there is no

3    dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

4    F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings,

5    the discovery and disclosure materials on file, and any affidavits "show there is no

6    genuine issue as to any material fact and that the movant is entitled to judgment as a

7    matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine"

8    if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

9    the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

10   under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

11   Where reasonable minds could differ on the material facts at issue, however, summary

12   judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

13   1995).  "The amount of evidence necessary to raise a genuine issue of material fact is

14   enough 'to require a jury or judge to resolve the parties' differing versions of the truth at

15   trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l*

16   *Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).  In evaluating a summary

17   judgment motion, a court views all facts and draws all inferences in the light most

18   favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fishbach & Moore, Inc.*, 793

19   F.2d 1100, 1103 (9th Cir. 1986).

20          The moving party bears the burden of showing that there are no genuine issues

21   of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

22   order to carry its burden of production, the moving party must either produce evidence

23   negating an essential element of the nonmoving party's claim or defense or show that

24   the nonmoving party does not have enough evidence of an essential element to carry its

25   ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

26   F.3d 1099, 1102 (9th Cir. 2000).   Once the moving party satisfies Rule 56's

27   requirements, the burden shifts to the party resisting the motion to "set forth specific

28   facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The

1  nonmoving party "may not rely on denials in the pleadings but must produce specific
2  evidence, through affidavits or admissible discovery material, to show that the dispute
3  exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do
4  more than simply show that there is some metaphysical doubt as to the material facts."
5  *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The
6  mere existence of a scintilla of evidence in support of the plaintiff's position will be
7  insufficient." *Anderson*, 477 U.S. at 252.

8  **IV.    DISCUSSION**

9      Nicholson brings this Motion seeking judgment on Lefever's Fourth Amendment
10 excessive force claim and Fourteenth Amendment due process claim.  However, the
11 only remaining claim is for a Fourteenth Amendment excessive force violation.

12     "[T]he Due Process Clause protects a pretrial detainee from the use of excessive
13 force that amounts to punishment," as opposed to the Eighth Amendment's protection
14 against deliberate use of force after conviction.  *Graham v. Connor*, 490 U.S. 386, 395
15 n.10 (1989); *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he
16 due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment
17 protections available to a convicted prisoner.").  "For under the Due Process Clause, a
18 detainee may not be punished prior to an adjudication of guilt in accordance with due
19 process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  In order to determine
20 whether the Due Process Clause is violated, "[a] court must decide whether the disability
21 is imposed for the purpose of punishment or whether it is but an incident of some other
22 legitimate governmental purpose."  *Id.* at 538 (1979).

23     Here, Lefever provides enough evidence demonstrating that the tight handcuffing
24 imposed upon him was objectively unreasonable, and not an incident of general prison
25 management.  Nicholson concedes that as a result of the glove accident, the handcuffs
26 were placed too tightly on Lefever, which caused Lefever some injury.  In his statement,
27 Nicholson noted that upon demanding that Lefever turn around in his cell for
28 handcuffing, Lefever "complied."  (*See* dkt. no. 49-1.)  Even assuming Lefever was

1  disruptive in the moments leading up to the handcuffing, the facts, viewed in the light

2  most favorable to Lefever, demonstrate that Lefever complied with the request to submit

3  to the handcuffing.  As soon as he was detained from behind, Lefever submitted to

4  Nicholson's authority, and the tightness of the cuffing was excessive.  Consequently, the

5  jury could reasonably conclude that Nicholson's tight handcuffing of Lefever was not

6  necessary to effectuate any legitimate purpose.

7      In his Motion, Nicholson cites general platitudes concerning the government's

8  interest in managing the NCDC and maintaining security and order at the facility, but is

9  unable to demonstrate how a tight handcuffing that leads to injury serves those

10  purposes.  Lefever does not challenge handcuffing in general; rather, he seeks to hold

11  Nicholson liable for injurious handcuffing in a specific situation that he alleges was

12  unrelated to any legitimate purpose.  Viewing the evidence in the light most favorable to

13  Lefever, Nicholson cannot demonstrate as a matter of law that the injurious handcuffing

14  was objectively reasonable and constitutionally permissible.

15      This holding is consistent with Ninth Circuit's precedent in analogous Fourth

16  Amendment cases examining handcuffing.  *See Graham*, 490 U.S. at 395 n.10 (noting

17  that excessive force claims are analyzed under either the Fourth, Fourteenth, or Eighth

18  Amendment depending on whether the force was inflicted during arrest, during pretrial

19  detention, or after conviction, respectively).   "It is well-established that overly tight

20  handcuffing can constitute excessive force."  *Wall v. Cnty. of Orange*, 364 F.3d 1107,

21  1112 (9th Cir. 2004).  The Ninth Circuit has allowed excessive force claims based on

22  tight handcuffing to proceed, but with facts distinguishable from those present here —

23  either because repeated requests to loosen the handcuffs were rejected or the

24  handcuffings were accompanied by other forms of violence. *See Wall*, 364 F.3d at 1112

25  (officer refused to loosen "extremely tight" handcuffing of plaintiff that was thrown into

26  squad car and driven to the police station); *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th

27  Cir. 2003) (officer placed tight handcuff on plaintiff after grabbing and twisting plaintiff's

28  arms and throwing her to the ground when plaintiff did not pose a safety risk); *LaLonde*

5

1   *v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (officers refused to release

2   tight handcuffs upon request, and allowed pepper spray to remain on plaintiff's face for

3   unnecessary length of time); *Palmer v. Sanderson*, 9 F.3d 1433, 1434-35 (tight

4   handcuffs not loosened upon request).

5       Here, Nicholson and his fellow deputy heeded Lefever's request to release the

6   improperly fastened handcuffs.   In his deposition, Lefever guessed that the tight

7   handcuffs were on him for a total of approximately eight to 15 seconds.  (*See* Lefever

8   Dep. at 33:24.)   Unlike the Fourth Amendment cases cited above, no other forms of

9   violence were inflicted upon Lefever, and Lefever's handcuffs were ultimately removed

10  upon request.  Faced with an admittedly close question in light of Circuit precedent, the

11  Court declines to remove from the ambit of a jury this fact-intensive dispute.[1]   *See*

12  *Lalonde*, 204 F.3d at 960 ("The issue of tight handcuffing is usually fact-specific and is

13  likely to turn on the credibility of the witnesses.").   Indeed, the Ninth Circuit previously

14  reversed a grant of summary judgment in favor of police officers who were alleged to

15  have arrested a woman through excessive force resulting from a tight handcuffing.  *See*

16  *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).   In that case, there is no indication

17  that the handcuffing occurred for an extended period of time over the plaintiff's objection,

18  or that other forms of physical abuse accompanied the detention.

19      Nicholson raises qualified immunity as a defense to Lefever's claim.   A law

20  enforcement officer is entitled to qualified immunity in a 42 U.S.C. § 1983 action unless

21  (1) the facts, when taken in the light most favorable to the plaintiff, show that the officer's

---

23      [1]Nicholson cites to another handcuffing case where the plaintiff alleged injuries as
24  a result of being placed in tight handcuffs, where the court held that no excessive force
    claim could stand because plaintiff did not provide evidence that she was "subject to a
    high degree of risk of serious harm, or in fact, that plaintiff was at risk of any harm at all."
25  *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 292 (S.D.N.Y. 2001).  In that case,
    since no evidence of gross negligence or willful conduct was presented, the court held
26  that the injuries were merely incident to a legitimate nonpunitive governmental objective,
    and could not state a Fourteenth Amendment claim.  *Id.* (*citing Bell*, 441 U.S. at 539).
27  Because Lefever's version of the disputed facts reveals no legitimate, nonpunitive
    governmental objective justifying the injurious handcuffing in light of Lefever's compliant
28  behavior, the Court declines to follow *Sulkowska*.

1    conduct violated a constitutional right; and (2) the right was clearly established at the

2    time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  As explained

3    above, the Ninth Circuit recognizes that the right to be free from excessive force in the

4    form of tight handcuffing was clearly established at the time of the incident.  *See Wall*,

5    364 F.3d at 1112 (9th Cir. 2004).  Since disputed questions of facts remain concerning

6    the precise nature and scope of Nicholson's interaction with Lefever, the validity of any

7    asserted government interest in the conduct, and the severity of the subsequent

8    handcuffing, denial of Nicholson's qualified immunity's is warranted ─ particularly where

9    the Ninth Circuit has expressly noted that these cases are necessarily fact-intensive.

10   *See e.g.*, *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir.2008) (noting

11   that where "historical facts material to the qualified immunity determination are in

12   dispute," summary judgment is inappropriate).

13   **V.    CONCLUSION**

14        Accordingly, Lefever's Fourteenth Amendment excessive force claim survives

15   Nicholson's Motion for Summary Judgment.  IT IS THUS HEREBY ORDERED that

16   Defendant Nicholson's Motion (dkt. no. 44) is DENIED.

17        IT IS FURTHER ORDERED that Plaintiff Lefever's Motion to Withdraw Motion to

18   Extend Time (dkt. no. 48) is GRANTED.  Plaintiff Lefever's Motion to Extend Time (dkt.

19   no. 46) is accordingly DENIED.

20

21        DATED THIS 14th day of March 2013.

22

23        _____
          MIRANDA M. DU
24        UNITED STATES DISTRICT JUDGE

25

26

27

28

7